## STERN *v.* WISCONSIN CENT. R. Co. and others.

*(United States Circuit Court, E. D. Wisconsin. January, 1880.)*

EQUITY PLEADING AND PRACTICE—RAILROAD MORTGAGE—FORECLOSURE BY BOND HOLDER.—Trustees in a railroad mortgage sued for strict foreclosure and general relief. Afterwards they filed a supplemental bill praying that a plan of re-organization, adopted by a large majority of bond holders, might be decreed, and a certain litigating bond holder restrained from interference. The litigating bond holder filed his independent bill for a foreclosure sale of the property and removal of the trustees. *Held,* that the litigating bond holder could only be heard for his individual rights by coming into the trustees' pending suit, and that his independent suit must be staid.

The opinion in this cause (8 Reporter, 488) was delivered before the defendants had pleaded, and while the case was before the court solely on a master's report, upon exceptions taken by defendants to the bill for scandal and impertinence. No issue had been at that time made on the record which involved the merits; but the court, nevertheless, upon simple inspection of the bill, declared at once that the action could not be maintained; and this intimation, given in advance of issue joined, was supposed by the court to substantially dispose of the case. The plaintiff, however, filed an amended bill, to which the defendant company demurred, and the defendant trustees filed a plea setting up the pendency of their own suit, and denying all the frauds which were alleged in the bill and have been already excepted to as scandalous and impertinent. The answer filed by the trustees in support of this plea denied, under oath and in detail, every fact and circumstance which charged improper action on the part of the present trustees, Stewart and Abbot, or of their predecessor, (the late Chief Justice Bigelow, of Massachusetts,) or of the defendant company. The case then came on to be heard upon the demurrer and plea.

—— *Mariner*, for complainant.

*Lynde & Wegg*, for trustees.

DYER, J. This case now comes before the court upon the demurrer of the railroad company, and the plea of the trustees, Stewart and Abbot, to the amended bill. The disposition of the case which, at least for the present, the court feels constrained to make, necessitates a statement of the history of the litigation which has thus far proceeded in this court, touching the subject-matter of this bill; as such litigation has arisen, not only in the present suit, but in the suit previously commenced by the trustees, which is now pending in this court. In view of the fact that this case, when it came up on exceptions to the original bill, was heard by the circuit judge, and, as the parties and their counsel, upon that hearing, received from him an expression of his views, which it was, at the time, supposed would give direction to further proceedings in the cause, I have felt it my duty to consult him with reference to the present *status* of the case, and the disposition which should be made of it in the shape in which it again comes before the court, and I am authorized to say that he entirely concurs in the disposition which it is now proposed to make of the case.

On the thirty-first day of December, 1875, George T. Bigelow and John A. Stewart, mortgagees and trustees in a mortgage made by the Wisconsin Central Railroad Company, on the first day of July, 1871, to secure an issue of bonds, filed their bill in this court against the railroad company and the Phillips & Colby Construction Company, in which was alleged the execution of the bonds and mortgage, the construction of a large portion of the railroad, and the acquisition of the title to 400,000 acres of lands, under a grant made in aid of the construction of the road, and the prayer of which bill was that the trustees might have possession of the road, lands and property described in the mortgage, and that the railroad company might be barred and foreclosed of and from all equity of redemption in and to the mortgaged premises. From other allegations in the bill, it would appear that the suit was instituted as a measure in aid of the completion of the

road, and of the acquisition of the entire land grant, and it did not seek a judicial sale of the mortgaged premises. Nothing further transpired in this suit until September 9, 1878, when, by leave of the court, an amended and supplemental bill was filed, in which, among other things, the death of Bigelow was suggested. This bill recited the substance of the original bill, and alleged that after the filing of the original bill such arrangements had been made between the bond holders and the railroad company that the road had been completed and the balance of the land grant had been earned. This arrangement included the funding of a large amount of coupons, which, for that purpose, were detached from the bonds, and sales of over three millions of additional bonds, and the use of funds thus obtained in the work of construction.

The bill further alleged the surrender of the road to the railroad company by the Philips & Colby Construction Company, which previous to such surrender the construction company had operated, the appointment by Stewart of Edwin H. Abbot as joint trustee in place of Bigelow under the mortgage, and his substitution in place of Bigelow as a co-complainant in the suit, and the prayer of the bill was that complainants might have possession of the railroad, franchises and property covered by the mortgage, and that the railroad company might be barred and foreclosed as prayed in the original bill.

On the thirty-first day of October, 1878, Theodore Stern and William Lawson, owners of bonds secured by the mortgage before spoken of, as such bond holders, filed their independent bill complaining that the trustees under the mortgage had in various ways violated their trust, and asking that the mortgaged property be sold under a decree of foreclosure. The defendants in this bill were, the Wisconsin Central Railroad Company, Charles L. Colby, Gardner Colby, Rowland G. Hazard, Moses Taylor, John A. Stewart, Edwin H. Abbot and H. F. Spencer. The bill set out at considerable length the history of this railroad enterprise; alleged that complainants were not parties to what is known as the fund-

ing scheme, and charged the trustees with various fraudulent acts. Subsequently the complainant Lawson, by his counsel, came into court and asked that the bill be dismissed as to him, and an order of dismissal was accordingly entered, so that thereafter it stood as a bill in behalf of Stern alone.

The case next came to the attention of the court by way of exceptions to the bill, filed by some of the defendants. These exceptions were heard by his honor, the circuit judge, in April, 1879, and he held (*Stern* v. *Wis. Cent. R. Co. et al.* C. L. N. August 16, 1879, p. 384) that the complainant ought not to proceed with his bill as an independent measure, but that he should come into the suit previously commenced by the trustees, and already pending in this court, and ask to be admitted for the protection of any equities which might exist in his favor; and in his opinion the circuit judge observed that if Stern should come in as a party to the original suit, it might be that he would have the right to ask the court to direct the trustees to amend their bill so that there might be a sale of the property, and that it would then be the duty of the court to consider what his equities might be, and how far those equities had been prejudiced or impaired, if at all, by any wrongful act of the trustees. No order was at the time made upon the specific exceptions which had been filed to the bill.

Subsequently Stern filed an amended bill, and, no appearance being entered thereto by the defendants, an *ex parte* order was entered by complainant, taking the amended bill as confessed. The case then came before the court upon a motion to set aside this order *pro confesso,* and to strike from the files the amended bill, and this motion was granted for the reason that these proceedings had been taken by complainant without notice to defendants, and without leave of court. The court, however, gave to complainant, leave to refile his amended bill, it being understood that it contained none of the supposed objectionable features of the original bill, and that it was filed for the purpose of more clearly presenting complainant's alleged equities, to the end that he might have a review by the supreme court of the question of his

right as a bond holder to maintain an independent bill in his own behalf. At the time leave was thus granted to file this amended bill, a formal order was entered sustaining one or more of the exceptions to the original bill, and overruling the others, the object of this order being to complete the record and make it accord with the views which had been previously expressed by the court.

This amended bill was refiled on the twenty-eighth day of July, 1879. The Farmer's Loan & Trust Company, the Barney & Smith Manufacturing Company, and the Cambria Iron Company were made additional parties to this amended bill, which reiterated the material allegations of the original bill, adding, however, many new allegations, charging more in detail the alleged fraudulent acts of the trustees, and that the suit which the trustees had previously commenced and was then pending in this court was brought by collusion between them and certain of the bond holders, who sought an inequitable advantage over complainant and other bond holders of his class; alleging, also, that bond holders, in whose behalf, as it was charged, said suit was instituted, were originally interested in the Phillips & Colby Construction Company, and that by virtue of such interests and connection with the construction of the road, and by virtue of the alleged funding scheme, and the issuance of additional bonds under the mortgage, they were asserting and seeking an inequitable and fraudulent advantage over bonds of the class represented by Stern; and the prayer of the bill is, not only that the mortgage be foreclosed and the mortgaged property sold, but that the trustees, Stewart and Abbot, be removed; that a receiver may be appointed to take possession of the mortgaged property; that proper accounts may be taken as between the stockholders and the different classes of bond holders, and that the trustees be enjoined from prosecuting the suit in their names then pending, and from further administration of the trusts and execution of the powers specified in the mortgage.

It should have been previously observed, but may be here stated, that on the twenty-fifth day of November, 1878, Stern

and Lawson filed in the trustees' suit a petition embodying in substance, but with some changes, the allegations of the original bill in their independent suit, and praying that the trustees, Stewart and Abbot, might be removed; that petitioners might become complainants in their place in that suit; that Gardner Colby, Rowland G. Hazard, Moses Taylor, H. F. Spencer, and the Farmers' Loan & Trust Company might be made parties defendant in that bill; and that, if the petitioners should not be made complainants in that suit, they might be permitted to appear and plead, answer or demur, and further file a cross-bill, setting up the facts stated in their petition.

After the dismissal of the bill filed by Lawson and Stern, as to Lawson, and on the eighth day of July, 1879, Stern filed a further or new petition in the trustees' suit, setting up facts as a basis for the prayer of the petition, which was that he might be made complainant in the trustees' suit; that the bill in that case might be amended so as to pray a sale; that a decree of foreclosure and sale might be entered therein; that the cause might be referred to a master to state an account, and to make report touching the matters alleged in the petition. On the twenty-fifth day of July, 1879, complainants in the trustees' suit filed a petition for leave to file a second supplemental bill in that case, and such proceedings were then had that an order was entered allowing a second supplemental bill to be filed, and such a bill, to which the railroad company and Stern were made parties defendant, was on July 25, 1879, filed. On the thirtieth of July an order was entered for the service of a subpœna, under this supplemental bill, upon the solicitor of Stern, and such service was on that day made.

This second supplemental bill states to some extent the history of the proceedings up to that time in the trustees' suit, alleges the filing of an independent bill by Stern & Lawson, and the institution by them of actions at law in the state court upon their bonds, with garnishee proceedings to reach moneys which were the earnings of the railroad company. It alleges that, under the circumstances, the trustees, on the fourth day of January, 1879, took formal possession of

the railroad and of the officers' books, papers and records of the company, as trustees under the mortgage, and were then in possession and operating the road. It alleges the proceedings which had taken place in the Stern suit, and sets forth a plan, then in progress by various parties in interest, for the reorganization and future management of the road. It sets out a series of transactions in connection with the funding of certain bonds secured by the mortgage, and seeks, by such allegations, to make Stern a party to the funding scheme, and to certain proceedings under which the proceeds arising from the sale of lands, which formed part of the mortgage security, were used by the parties in interest for the payment of interest on bonds and otherwise, and charges that Stern, by the prosecution of his independent suit, is interfering with the administration by the trustees of their trust, and with proceedings instituted for the common benefit and best interests of all the bond holders. The proposed plan of reorganization is also set out as an exhibit to the bill, and the prayer of the bill is that the trustees may be instructed by the court, in the execution of their trust, that the railroad company and Stern may be required to submit to the proposed plan of reorganization and issuance of new bonds; that such plan may be carried out, and that Stern may be enjoined from prosecuting any actions at law, or otherwise, upon his bonds and coupons. It should be added that on the sixth day of October, 1879, Stern interposed a demurrer to complainant's bill in the trustees' suit, and that no further proceedings have since been had in that suit.

Now to the amended bill in the Stern suit the railroad company and the defendant, Charles L. Colby, on the 30th day of August, 1879, filed a demurrer, and on the 6th day of October, 1879, the trustees, Stewart and Abbot, interposed a plea of the pendency of the previous suit brought by them, and denying the alleged frauds and breaches of trust set out in the amended bill, and accompanying their plea with an answer in aid thereof; and this case was brought to argument upon the sufficiency of this plea, as well in form as

in substance, so that the case is now before the court upon
the question of the sufficiency of the plea, and there is per-
haps incidentally involved, though it was not argued, the de-
murrer filed by other parties.

Enough has been stated of the character and history of
this litigation to show with sufficient accuracy the present
*status* of this case and of the parties to the litigation.   And
the attitude of the case, as it now comes before us upon the
amended bill and the demurrer and pleas thereto, would seem
to be that of an independent measure, in course of regular
prosecution and defence.   As already stated, when the case
was previously before us it was supposed by the court that
the views then expressed would result in a transfer of this
whole controversy to the trustees' suit, where, in our opinion,
it rightfully belonged.   That suit had been commenced by
the trustees and was pending when Stern filed his independent
bill.

The trustees' suit, as originally commenced, was one which
involved the rights, equities and interests of all parties in-
terested, and it then seemed to us that it would be an
anomaly to have pending in the same court two such suits as
these; one brought and prosecuted by the trustees under the
mortgage, and the other by a single bond holder, and a
review of the *status* of this controversy, in connection with
the questions which directly arise under the issues made by
the amended bill, and the demurrers and pleas, does not
incline us to recede from the position first taken.   There was
much discussion upon the argument as to whether the nature
of the suit brought by the trustees, especially in view of the
character of their second supplemental bill, was such that it
could be plead in bar of the Stern suit.

Whatever technical distinctions may be taken in this re-
gard, we think it clear that no such relief as is asked in either
of the bills filed in the trustees' suit could be granted with-
out affecting the interests of the bond holders, and that no such
relief could be granted to the complainant Stern, as is prayed
in his bill, without affecting the trustees and other parties
in interest.   And we think it equally clear that this litigation

should proceed in one suit. To the trustees' suit, which was first commenced, Stern, as one of the bond holders, had a clear right to apply for admission, to contest the very matters which he sets up in his independent bill. It is true that he was not made a party to that suit until the second supplemental bill was filed, which was after he had filed his own bill, and that, in the nature of the relief asked, the supplemental bill is a radical departure from the relief sought by the original bill; but, notwithstanding this, we think it is not an effective obstacle to the assertion by Stern, in that suit, of his rights and equities, if he has any; and it would certainly be an anomaly, and a course of procedure which we could not sanction, to permit this litigation to go forward in its present form, in part in the trustees' suit, and in part in a suit subsequently commenced by a single bond holder.

The court has the power, we suppose, either to consolidate the two cases, or to stay the proceedings in one, thereby transferring the controversy to the other, and one or other of these courses we deem it the duty of the court to take. Something was said upon the argument to the effect that complainants in the trustees' suit had given such shape to that case, by proceedings subsequent to the original bill, that a foreclosure of the mortgage was rendered impossible, and that there could not be given to Stern in that suit the redress to which he deems himself entitled. We do not think so. It is not a question here as to which of the parties to this controversy shall or can be *dominus litus.* The litigation is under the control of the court, and, if need be, the court has the power and may rightfully assume the functions of that office.

That Stern, as a party to the trustees' suit, may answer the bills which are therein filed, and may interpose his crossbill, and may by such appropriate pleadings bring fully before the court the matter set up in the amended bill in his suit, we cannot doubt, nor do we doubt the power of the court, upon a full presentation of all the equities in that suit, to adjudicate upon them as completely as it might do in any other form; and, in the action which we shall take with reference to these causes, it will be understood that it is not

intended by the court to curtail or prejudice any rights which Mr. Stern as a bond holder has in the premises. It is with the view of giving to him and to all other parties as complete and just adjudication of any rights and equities which they have, and at the same time maintain an orderly course of procedure, that we take the action now contemplated.

For the present the demurrer and pleas to complainant's amended bill will stand undisposed of. Proceedings in this case will be stayed until further order, with the right, however, reserved to complainant, if he shall so elect, to have the cases consolidated.

The litigation between these parties will be transferred to the trustees' suit, and complainant, Stern, will have the right, if he has not already done so, to take such suitable and apt proceedings in that suit as he may be advised, for the purpose of securing an adjudication of any rights to which he may be entitled.